646 A.2d 589

**Hardie W. BECK**

v.

**David L. BECK and Patricia K. Beck.**

**Appeal of Patricia K. BECK.**

Superior Court of Pennsylvania.

Argued March 17, 1994.

Filed June 17, 1994.

Reargument Denied Aug. 29, 1994.

450

Robert L. Potter, Pittsburgh, for appellant.

D. Keith Melenyzer, Washington, for appellee.

Before WIEAND, DEL SOLE and HUDOCK,* JJ.

WIEAND, Judge.

Before this court for review is an order of the trial court which struck from the record a satisfaction of judgment.

 A petition to strike a satisfaction of judgment is equitable in nature and is governed by equitable principles. *Epstein v. Kramer*, 365 Pa. 589, 591, 76 A.2d 212, 213 (1950). See also: *City Deposit Bank and Trust Co. v. Zoppa*, 336 Pa. 379, 9 A.2d 361 (1939). A petition to strike the entry of satisfaction is addressed to the discretion of the trial court, whose exercise thereof will not be disturbed unless there has been an abuse of discretion. *Shoup v. Shoup*, 205 Pa. 22, 23, 54 A. 476, 476 (1903). The entry of satisfaction of a judgment may be stricken where the satisfaction has been entered by fraud or mistake. *Philadelphia v. Simon*, 12 Pa.Super. 159, 162 (1899). See also: *Epstein v. Kramer, supra; Shoup v. Shoup, supra.*

In 1981, Hardie W. Beck made a loan of ninety thousand ($90,000.00) dollars to his son and daughter-in-law, David L. and Patricia K. Beck, to assist them in buying a home. As evidence of the indebtedness, Hardie Beck accepted from his son and daughter-in-law a "mortgage note." According to the terms of the note, the loan was to be repaid in 360 monthly installments of principal and interest, each in the amount of $429.70. After a default had occurred, Hardie Beck telephoned the Office of the Recorder of Deeds of Allegheny County in order to learn the procedure for imposing a lien against the home of his son and daughter-in-law. He was instructed to take the mortgage note to the Office of the Prothonotary. On April 14, 1989, Hardie Beck went to the Prothonotary's office and confessed judgment on the note for $81,835.70.

* Hudock, J., did not participate in the consideration or decision of this appeal.

■ Subsequently, David Beck complained to his father about the entry of judgment, and Hardie Beck told his son that he had wanted only to enter the mortgage note as security for the money owed him. On May 17, 1989, Hardie Beck returned to the Prothonotary's Office and explained that he didn't want to enter judgment but only wanted the mortgage note to be entered as a lien against the home of his son and daughter-in-law. An employee of the prothonotary produced a form which the employee completed and asked Hardie Beck to sign.[1] The form directed the prothonotary to satisfy the judgment. Thereafter, Hardie Beck was given the mortgage note and supporting documents, which he then took to the Office of the Recorder of Deeds, where the mortgage note was accepted and filed of record. Thereafter, sporadic payments continued to be made to Hardie Beck until September 27, 1990,[2] when David Beck died. On July 2, 1992, Hardie Beck filed a petition to strike the satisfaction of the judgment. This was submitted to the court for decision on the deposition testimony of Hardie Beck and Patricia Beck, who testified that Hardie Beck had told her he intended by his satisfaction of the judgment to forgive repayment. The trial court found that the satisfaction of the judgment had been entered by mistake, contributed to by officers of the court, and ordered it stricken. Patricia Beck appealed.[3]

1. To complete the form, the employee had to select one of three listed options; he could either settle, discontinue or satisfy the judgment. The employee selected the option to satisfy the judgment.

2. It is disputed whether the payments were on account of the mortgage note.

3. Appellee's motion to quash the appeal will be denied. Although the appealability of an order striking a satisfaction of judgment was questioned by the Superior Court in *Philadelphia v. Simon, supra,* the Supreme Court consistently, without comment, has entertained appeals from orders granting or refusing to grant petitions to strike satisfactions of judgment. See: *Epstein v. Kramer, supra; City Deposit Bank and Trust Co. v. Zoppa, supra; Shoup v. Shoup, supra.* The current Rules of Appellate Procedure do not suggest that such orders are not appealable. Because execution can issue on an unsatisfied judgment, we hold that an order striking the satisfaction of a judgment is sufficiently final to be appealable. This is not altered merely because the judgment debtor may subsequently file a petition to open the judgment. Such a proceeding, which may or may not be attempted, is a separate proceeding,

■ After careful review, we are satisfied that the trial court's findings are supported by competent evidence and that its order does not constitute an abuse of discretion.

■ Appellant argues, however, that the testimony of Hardie Beck was barred by the Dead Man's Rule recorded at 42 Pa.C.S. § 5930 and should not have been considered by the trial court.[4] A close examination of the statute, however, discloses that it has no application where the action or proceeding is against a surviving joint promisor and the matter occurred between the surviving promisor and the other party of record. In the instant case, the appellee did not testify to anything about which the deceased joint promisor could con-

which does not impair the immediate appealability of an order striking satisfaction of the judgment.

4. The provisions of 42 Pa.C.S. § 5930 are as follows:

§ 5930. Surviving party as witness, in case of death, mental incapacity, etc.

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, unless the action or proceeding is by or against the surviving or remaining partners, joint promisors or joint promisees, of such deceased or lunatic party, and the matter occurred between such surviving or remaining partners, joint promisors or joint promisees and the other party on the record, or between such surviving or remaining partners, promisors or promisees and the person having an interest adverse to them, in which case any person may testify to such matters; or, unless the action is a possessory action against several defendants, and one or more of said defendants disclaims of record any title to the premises in controversy at the time the suit was brought and also pays into court the costs accrued at the time of his disclaimer, or gives security therefor as the court in its discretion may direct, in which case such disclaiming defendant shall be a fully competent witness; or, unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property be devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

tradict him. See: *Mozino v. Canuso*, 384 Pa. 220, 120 A.2d 300 (1956). The mortgage note on which the judgment was entered had been signed by both David and Patricia Beck and represented an obligation that was joint and several. The circumstances surrounding the entry of judgment, the satisfaction of the judgment and the recording of the mortgage note in the Office of the Recorder of Deeds were not such that David Beck could have testified in refutation of his father. The conversation between appellee and his son prior to the satisfaction of the judgment did not form a basis for the relief which appellee requested from the court, and the substance of the conversation was irrelevant except to demonstrate the son's displeasure with his father's entry of judgment. Thereafter, the appellee acted according to his own will and without relying on promises, if any, made by the son. The circumstances surrounding appellee's subsequent conduct in satisfying the judgment, moreover, were confirmed in large measure by documentary evidence, to which the statute can have no application.

Finally, it is significant that appellant testified that appellee had told her prior to her husband's death that by satisfying the judgment he intended to forgive repayment of the loan. This testimony made appellee competent to testify in rebuttal thereof and to his intent when he satisfied the judgment, as well as the circumstances which confirmed that intent. See: 42 Pa.C.S. § 5933; *Huntley v. Goodyear*, 182 Pa. 613, 38 A. 507 (1897).

The Dead Man's Rule has been frequently criticized because of its obstruction of honest claims and its excessive complexity. Packel and Poulin, Pennsylvania Evidence § 601.5 (1987). It will not be extended to defeat a claim, under the circumstances of this case, which is being asserted not against the estate of a decedent but against a surviving joint obligor who has testified that the obligee told her that he intended to forgive the loan which he was attempting to enforce.

Order affirmed.